UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO.: 1:01cv217-R

QUALITY SYSTEMS, INC.                                                                         PLAINTIFF

v.

PERMACRETE SYSTEMS, LIMITED                                                    DEFENDANT

### MEMORANDUM OPINION

This matter comes before the Court on the Plaintiff's Motion to Hold the Defendant in Civil Contempt (Docket #28). The Defendant, Permacrete Systems, Limited ("PSL") has responded (Docket #30), and the Plaintiff, Quality Systems, Inc. ("QSI") has replied. This matter is now ripe for adjudication. For the following reasons, the Plaintiff's motion is **GRANTED in part** and **DENIED in part**.

### BACKGROUND

QSI is a US corporation that holds a trademark in the US to the mark "Permacrete." PSL is a Canadian corporation that holds a trademark in Canada to the mark "Permacrete." On January 6, 2005, this Court issued an agreed order and permanent injunction on behalf of the parties, which held that PSL would not infringe on the recognized trademark rights concerning the trademark "Permacrete" in the United States (Docket #25). In pertinent part, the order and injunction mandated: that the Defendant could not use the trademark "Permacrete" in commerce in the United States; that the Defendant could not use any mark that would likely create any confusion among the public as to who held the rights to the Permacrete trademark in the United States; and though PSL retained the rights to use the trademark "Permacrete" outside the United States as well as maintain its Canadian website, PSL could only advertise and/or market their product "only if directed inside Canada."

About two (2) weeks after the Court order and injunction, Mr. Donald Pinger, of West Hartford, Connecticut, received promotional materials from PSL that were sent to him in the US; however, these materials were requested by Mr. Pinger on behalf of the Plaintiff. Included in this package of materials was the trademark "Permacrete" on several of the items received; however, the package also indicated that PSL was a Canadian company ("Canada's Leader in Dry Basements and Concrete Repair"), and that their items in the US were sold as "Perma-Dry," as indicated by PSL President William Cole ("Mr. Cole"). Eight months later, Doug Wilson of Sanibel Island, Florida, also received a similar package of promotional materials from PSL, which he had also requested on behalf of the Plaintiff.

As a result of these promotions and other alleged encroachments, QSI filed this motion requesting sanctions for civil contempt, including: $25,000 in damages sustained by the Plaintiff because the order and injunction were violated; reasonable attorneys' fees and expenses; and the posting of a $25,000 bond by PSL for the benefit of QSI should the Defendant continue to not abide by the order and injunction. The Defendant denies that the use of "Permacrete" in the alleged circumstances was improper, but states that even if it was, the Plaintiff has not demonstrated an injury because the materials were solicited on its behalf.

## STANDARD

"When a court seeks to enforce its order or supervise its judgment, one weapon in its arsenal is contempt of court. *See NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 588 (6th Cir.1987). Recognizing that the power 'to punish for contempts' should not be used lightly, the Supreme Court has stated that this power 'is a necessary and integral part of the independence of the judiciary, and is absolutely essential to the performance of the duties imposed on them by

2

law. Without it they are mere boards of arbitration, whose judgments and decrees would be only advisory.' *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 450 (1911). Contempt proceedings enforce the message that court orders and judgments are to be complied with in a prompt manner. *Cincinnati Bronze*, 829 F.2d at 590. With respect to civil contempt proceedings, '[j]udicial sanctions...may, in a proper case, be employed for either or both of two purposes; to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained.' *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947).

In order to hold a litigant in contempt, the movant must produce clear and convincing evidence that shows that 'he violated a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order.' *Cincinnati Bronze*, 829 F.2d at 591 (quotation and brackets omitted). Clear and convincing evidence is a not a light burden and should not be confused with the less stringent, proof by a preponderance of the evidence. *See Consol. Coal Co. v. Local Union No. 1784*, *United Mine Workers of Am.*, 514 F.2d 763, 766 (6th Cir.1975). Once the movant establishes his prima facie case, the burden shifts to the contemnor who may defend by coming forward with evidence showing that he is presently unable to comply with the court's order. *United States v. Rylander,* 460 U.S. 752, 757 (1983) ('[w]here compliance is impossible, neither the moving party nor the court has any reason to proceed with the civil contempt action. It is settled, however, that in raising this defense, the defendant has a burden of production.'). To meet this production burden in this circuit 'a defendant must show categorically and in detail why he or she is unable to comply with the court's order.' *Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th

Cir.1996) (quotation omitted). When evaluating a defendant's failure to comply with a court order, we also consider whether the defendant 'took all reasonable steps within [his] power to comply with the court's order.' *Peppers v. Barry*, 873 F.2d 967, 969 (6th Cir. 1989)." *Electrical Workers Pension Trust Fund of Local Union |58, IBEW v.Electrical Workers Pension Trust Fund of Local Union 58, IBEW v. Gary's Elec. Service Co.*, 340 F.3d 373, 378-79 (6th Cir. 2003) ("*IBEW*").

## DISCUSSION

The Court must first determine whether Defendant violated the terms of the Court order and injunction of January 6, 2005.  After making this determination, the Court must then assess the appropriate sanctions, if any, it should assess against PSL.  The Court will analyze of each of these matters separately.

### *Whether PSL violated the Court Order and Injunction*

The Plaintiff has submitted evidence demonstrating that the Defendant had used the "Permacrete" trademark for commercial purposes in the United States against the order and injunction issued by this Court.  The headers of several pages sent by PSL to customers in the United States had "Permacrete" situated at the top of the page, including the first page of the package.  Though PSL submitted a page that explained that their product in the US is registered as "Perma-Dry," the headings on the first few pages, as well as the credit application form, confidentiality agreement, advertisements and product use/explanatory pages all have the "Permacrete" mark in bold on its pages.  This evidence amounts to clear and convincing proof that PSL violated the Court to refrain from using the "Permacrete" trademark for commercial purposes in the US. *See IBEW* at 379 (citing *Consol. Coal Co.*, 514 F.2d at 766).  As such, the

burden shifts to PSL to show that it was unable to comply with the order and injunction, and whether PSL took all "reasonable steps within [its] powers" to abide by the Court order and injunction. *IBEW* at 379 (citing *Peppers*, 873 F.2d at 969).

In its response, the Defendant has not addressed why it could not abide by the Court order and injunction, but has instead argued that it is allowed to use its internet site, and thus has not violated the express terms of the order and injunction. The Defendant further contends that QSI waited a long while after discovering the violations to inform the Court. PSL has not offered any evidence to demonstrate how it was unable to abide by the Court order and injunction. Additionally, PSL has not taken all of the reasonable steps it could have since the order and injunction to ensure that it was not violated. Perhaps not immediately after the Court order and injunction, but certainly by the time the promotional materials were sent out in August 2005, PSL had more than sufficient time to change its headers on all of its documents and promotional materials that it knew would be sent into the US. Accordingly, the Defendant has violated the Court order and injunction by engaging in commerce in the US using the registered trademark of the Plaintiff.

### *Sanctions against PSL*

In determining the amount and extent of sanctions that should be imposed against PSL for violating the Court order and injunction, the Sixth Circuit Court of Appeals has held that "'although civil contempt may serve incidentally to vindicate the court's authority, its primary purposes are to compel obedience to a court order and compensate for injuries caused by noncompliance.'" *Redken Laboratories, Inc. v. Levin*, 843 F.2d 226, 229-230 (6th Cir. 1988) (quoting *TWM Mfg. Co. v. Dura Corp.*, 722 F.2d 1261, 1273 (6th Cir.1983)). "The magnitude of

the sanctions imposed should be assessed by weighing the harm caused by noncompliance, 'and the probable effectiveness of any suggested sanction in bringing about the result desired.'" *Glover v. Johnson*, 199 F.3d 310, 312 (6th Cir. 1999) (quoting *United States v. United Mine Workers*, 330 U.S. 258, 304 (1947)).

The Plaintiff asks for $25,000 in damages sustained for the Defendant violating the Court order, as well as attorney's fees and a $25,000 bond by PSL for the benefit of QSI. However, the Plaintiff has not demonstrated to what extend they have been personally injured other than the solicitation of PSL for materials commenced at the request of QSI. In *Redken*, the case cited by the Plaintiff in support of their damages, the Defendant in the matter had violated the order and injunction more than three (3) times over a period of ten (10) years before the Court ordered the exact sanctions requested by the Plaintiff. *Redken*, 843 F.2d at 228. Further, the Plaintiff in *Redken* had direct evidence that not only was the Defendant violating the order and injunction, but he was also actively soliciting clientele to sell the Plaintiff's product in his store against the order of the Court. *Id*. In the instant matter, in contrast to *Redken*, the Defendant has arguably committed two (2) violations against the Court, with the January 2005 incident questionable considering that the Defendant had about two (2) weeks time to comply with the order and to make the necessary changes to its promotional materials. Additionally, in comparison to *Redken* where the Defendant actively sought out clients when selling the prohibited products, QSI solicited the materials from the Defendant on both occasions. Thus, though the Defendant may have violated the order and injunction, the Plaintiff has not suffered as significant of an injury as demonstrated by the Plaintiff in *Redken*.

The purpose of a civil contempt findings is two-fold, and though the Plaintiff may have

6

only personally suffered a *de minimis* injury, the other purpose of a civil contempt finding is to discourage a violator from continuing his/her conduct and abide by the Court order and injunction. *Glover* at 312.  A $25,000 bond posted by PSL for the benefit of QSI, conditioned on future adherence of the Court order and injunction, would deter PSL from continuing to use the "Permacrete" trademark when conducting commercial activities in the US.  Accordingly, the Court orders that the Defendant post a $25,000 bond for the benefit of QSI should any further infraction that violates the Court order and injunction occur.  Lastly, the Court orders that the Defendant pay all reasonable attorney's fees and expenses sustained by the Plaintiff. *TWM*, 722 F.2d at 1273.  PSL shall file and pay these fees within fourteen (14) days of this opinion.

    An appropriate order shall issue.